# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| VERONICA MCMILLIN,<br><br>                  Plaintiff,<br><br>v.<br><br>ANDREW SAUL[1],<br>Acting Commissioner of Social Security,<br><br>                  Defendant. | 2:17-cv-02130-CLB<br><br><u>**ORDER**</u> |

This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Veronica McMillin's ("McMillin") application for disability insurance benefits pursuant to Title II of the Social Security Act. Currently pending before the Court is McMillin's motion for reversal or remand. (ECF No. 16.) In this motion, McMillin seeks the reversal of the administrative decision and remand for an award of benefits. (*Id.*) The Commissioner filed a response and cross-motion to affirm (ECF No. 18/19), and no reply was filed. Having reviewed the pleadings, transcripts, and the Administrative Record ("AR"), the Court concludes that the Commissioner's decision is supported by substantial evidence. Therefore, the Court denies McMillin's motion for reversal and/or remand, (ECF No. 16), and grants the Commissioner's cross-motion to affirm, (ECF No. 19).

**I.    STANDARDS OF REVIEW**

    A.    <u>Judicial Standard of Review</u>

This Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the Court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Shalala,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if substantial evidence supports the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

B. <u>Standards Applicable to Disability Evaluation Process</u>

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or

combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p.1 If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in

accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four in order to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(f), 416.920(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

**II.     CASE BACKGROUND**

A.     Procedural History

McMillin applied for disability insurance benefits ("DIB") on March 25, 2010 with an alleged disability onset date of July 19, 2008. (Administrative Record ("AR") 153-56.) The application was denied initially (AR 77-80), and on reconsideration. (AR 82-84.) McMillin subsequently requested an administrative hearing. (AR 85.)

On October 19, 2011, McMillin appeared, with counsel, at a hearing before ALJ Eileen Burlison. (AR 45-72.) Carly Coughlin, a vocational expert ("VE"), also appeared at

the hearing. (*Id.*) The ALJ issued a written decision on November 10, 2011, finding that McMillin had not been disabled at any time between the alleged onset date and the date of the decision. (AR 23-28.) McMillin appealed, and the Appeals Council denied review on June 6, 2013. (AR 1-7.)

McMillin filed a complaint for judicial review on August 22, 2013. (AR 497-510.) Pursuant to the parties' stipulation, this Court remanded for further administrative proceedings. (AR 516-17.) The ALJ was instructed on remand to "identify and resolve any conflicts between the occupational evidence provided by the VE and information in the Dictionary of Occupational Titles ("DOT")," among other tasks. (*Id.*) A second administrative hearing was conducted on January 13, 2015. (AR 453-96.) ALJ Burlison presided, and McMillin, her attorney, and VE Jacklyn Benson-DeHaan were present. (*Id.*) The ALJ issued a second decision on January 28, 2015, and again found McMillin not disabled. (AR 436-46.)

McMillin filed a complaint seeking judicial review of the ALJ's second decision on April 25, 2015. (AR 833-848.) The Court ultimately found legal error in the ALJ's decision and reversed and remanded for further administrative proceedings. (*Id.*) The ALJ was instructed on remand to address whether a conflict existed between the VE's testimony related to a sit/stand option and the DOT. (*Id.*) A third administrative hearing was conducted on January 26, 2017. (AR 768-828.) ALJ Janice E. Shave presided, and McMillin, her attorney, and VE Jacklyn Benson-DeHaan were present. (*Id.*) The ALJ issued a decision on April 10, 2017, and again found McMillin not disabled. (AR 743-756.) Accordingly, the ALJ's decision became the final decision of the Commissioner. Having exhausted all administrative remedies, McMillin filed a complaint for judicial review on August 8, 2017. (ECF No. 1-1.)

B. <u>ALJ's Decision</u>

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 746-759.) Ultimately, the ALJ disagreed that McMillin had been disabled from March 25, 2010, the date the application

was filed, through December 31, 2013, the date last insured. (*Id.* at 759.) The ALJ held that, based on McMillin's RFC, age, education, and work experience, there were jobs in the national economy that she could perform. (*Id.* at 756-759.)

In making this determination, the ALJ started at step one. Here, the ALJ found McMillin had not engaged in substantial gainful activity from the alleged onset date of July 19, 2008, through her date last insured of December 31, 2013. (*Id.* at 748.) At step two, the ALJ found McMillin had the following severe impairments: acute central right-sided disc herniation with compression on the spinal cord status-post decompression and implantation, fibromyalgia, carpal tunnel syndrome, and incontinence. (*Id.* at 749-750.) The ALJ also considered evidence in the record regarding abdominal/substernal chest pain, obesity, depression, and anxiety, but found none of those conditions to be severe. (*Id.*) At step three, the ALJ found McMillin did not have an impairment or combination of impairments that either met or medically equaled the severity of those impairments listed in 20 C.F.R. Part 404, Subpart P, Appx. 1; 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (*Id.* at 751.)

Next, the ALJ determined McMillin had an RFC to perform sedentary work, as defined by 20 C.F.R. § 404.1567(a), except she needed an at-will sit/stand option at approximately 30-minute intervals to shift position, and the following additional limitations:

> She required two 15-minute breaks and a minimum 30-minute lunch during an 8-hour workday, which could coincide with regularly scheduled breaks. She could never climb ladders, ropes or scaffolds, never crouch or crawl, occasionally climb ramps and stairs, occasionally balance at ground level with no handheld device, and frequently handle and finger. She could not have driven for work or walked on uneven surfaces. She required a workstation within a 5-minute walk to a restroom, but she did not need extended time in the restroom. She needed to avoid even moderate exposure to working at unprotected heights and operating hazardous or moving machinery. She was able to understand, remember and carry out instructions and perform work up to a maximum specific vocational preparation (SVP) 4 based on her general education degree combined with intrusive pain complaints and non-severe mental health symptoms. Lastly, she would likely have been off task approximately 6 minutes per hour, in addition to regularly scheduled breaks, in order to shift position and use the restroom.

(*Id.* at 751-755.)

The ALJ found McMillin's impairments could reasonably be expected to cause some of the symptoms alleged, but that her statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.* at 752.) In reaching this conclusion, the ALJ reviewed and discussed the objective medical evidence, medical opinions, and factors weighing against McMillin's credibility. (*Id.* at 752-55.)

The ALJ then determined that McMillin was able to perform past relevant work as a benefits clerk, which does not require the performance of work-related activities precluded by McMillin's RFC. (*Id.* at 755-56.) Further, the ALJ found that even if McMillin was not capable of performing any past relevant work, there are other jobs that exist in significant numbers in the national economy that she is also able to perform. (*Id.* at 756.) Thus, proceeding to step five, and relying on the testimony of the VE, the ALJ determined that McMillin's age, education, work experience, and RFC would allow her to perform occupations existing in significant numbers in the national economy, such as: document preparer and charge account clerk. (*Id.* at 756-58.) Accordingly, the ALJ held that McMillin had not been under a disability from July 19, 2008, the alleged onset date, through December 31, 2013, the date last insured, and denied her SSI claim. (*Id.* at 758-59.)

**III.     ISSUES**

McMillin seeks judicial review of the Commissioner's final decision denying her DBI under Title II of the Social Security Act. (ECF No. 16.) McMillin raises the following issues for this Court's review:

1. Whether substantial evidence supports the ALJ's rejection of McMillin's subjective symptom testimony; and,

2. Whether the ALJ improperly accepted the testimony of the VE.

//
//
//

## IV. DISCUSSION

### A. Adverse Credibility Finding

McMillin argues the ALJ failed to provide specific findings for discrediting her symptom claims, instead relying on boilerplate language, the lack of support of the objective medical evidence, and McMillin's conservative treatment. (ECF No. 16 at 4-11.) An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154m 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the

claimant's work record; and, (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

A review of the record shows the ALJ provided specific, clear, and convincing reasons for finding McMillin's statements concerning the intensity, persistence, and limiting effects of her symptoms less than credible.

i. *"Boilerplate" Language*

McMillin first takes issue with the following statement in the ALJ's decision:

> After careful consideration of the evidence, I find the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. Accordingly, these statements are found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record.

(AR 752.) McMillin argues that this conclusory statement by the ALJ is wholly insufficient to reject McMillin's testimony. (ECF No. 16 at 5-7.) To support her argument, McMillin cites to several cases from the Seventh Circuit and one case from the Ninth Circuit, which discuss use of "boilerplate" language to disregard a claimant's credibility. (*Id.* at 6-7.) Looking to the Ninth Circuit decision, *Robbins v. Social Security Administration*, the Ninth Circuit found that the ALJ did not provide a "narrative discussion" that "contain[s] specific reasons for finding …, supported by the evidence in the case record"; nor was his brief notation "sufficiently specific to make clear … the weight the adjudicator gave to the individual's statements and the reasons for that weight," as he is required to do. 466 F.3d 880, 884 (9th Cir. 2006) (citing SSR 96-7p, 1996 WL 374186, *2; SSR 96-8p, 1996 WL 374184, at *7). Thus, the court found that "the complete lack of meaningful explanation" gave the court "nothing with which to assess its legitimacy." *Id.*

While the Court agrees that the ALJ's statement *standing alone* would be insufficient to reject McMillin's testimony, McMillin fails to address the ALJ's detailed summary of McMillin's testimony and her alleged subjective symptom allegations. (*See*

10

AR 751-55.) Accordingly, the Court does not find that the use of the boilerplate language was impermissible, given the ALJ provided clear and convincing reasons for finding McMillin not credible to the extent her testimony exceeds the RFC.

### ii. *Objective Medical Evidence and Conservative Treatment*

Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ relied on objective medical evidence that supports the RFC rather than McMillin's allegations of pain. Although the ALJ cannot cherry pick objective medical evidence from the record, they can consider contrary objective medical evidence in making a credibility determination. Here, the ALJ provided a thorough summary of the medical evidence in which she highlighted specific objective findings that support the assigned RFC. (AR 751-55.) She also considered that McMillin's treatment modalities have been effective at relieving her pain and other symptoms. (AR 753.) McMillin testified that her medications were helpful in easing her pain. (AR 464, 753.) Further, the ALJ found that McMillin's treatment was mostly through conservative methods such as a TENS unit, pain management, and physical therapy, which showed improvement in McMillin's pain levels. (AR 753.) Notable, is the ALJ's finding that there are no additional treatment records between July 2012 and the date last insured of December 31, 2013. (*Id.*) Thus, based on these findings, the ALJ assigned a reduced RFC with postural and environmental limitations. Accordingly, the Court finds the ALJ provided clear and convincing reasons for finding McMillin not credible to the extent her testimony exceeds the RFC.

### iii. *Daily Activities*

An ALJ may discredit a claimant's testimony when she reports participation in everyday activities indicating capacities that are transferable to a work setting. *See Molina*, 674 F.3d at 1112-13; 20 C.F.R. § 404.1529(c)(3)(i). Further, the inconsistency between a claimant's alleged symptoms and her daily activities, is sufficient to support a

finding that a plaintiff was not entirely credible. *See Lingenfelter*, 504 F.3d at 1040 (in determining credibility, an ALJ may consider "whether claimant engaged in daily activities inconsistent with alleged symptoms"). Specifically, daily activities may be grounds for discrediting a claimant's testimony when a claimant "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferrable to a work setting." *Fair v. Brown*, 885 F.2d 597, 603 (9th Cir. 1989). Even when such activities suggest some difficulty functioning, the ALJ may discredit a claimant's testimony to the extent they contradict claims of a totally debilitating impairment. *See Turner*, 613 F.3d at 1225.

Here, the ALJ also found McMillin less credible because the account of her daily activities was inconsistent with her alleged limitations. (AR 753.); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (inconsistency between a claimant's alleged symptoms and his daily activities may be a clear and convincing reason to find a claimant less credible). McMillin testified that she could only perform minimal sitting, and that 15 or 20 minutes is "too long" and would exacerbate her lower back pain. (AR 471.) However, McMillin also testified that she was able to take a two-day road trip from Nevada to Oregon, suggesting McMillin's capacity to sit was significantly greater than she alleged. (AR 480.) Further, McMillin told treatment providers that she "is performing yoga and going on daily walks," (AR 702, 753), activities that are again indicative of a greater physical capacity than McMillin has alleged. Based on these, and other findings, the ALJ determined McMillin's subjective symptom testimony was inconsistent with her alleged impairments. (AR 751-55.)

Based on the above, the Court finds the ALJ provided "specific, clear and convincing" reasons supported by substantial evidence for discounting McMillin's credibility as to her subjective limitations.

B. <u>Reliance on Vocational Expert's Testimony</u>

McMillin argues the ALJ improperly relied on the VE's testimony that would require an employer to provide an accommodation not mandated by state or federal law. (ECF

No. 16 at 12.) The ALJ found that McMillin's severe impairments require her to have two 15-minute breaks during an eight-hour workday. (AR 751.) Additionally, the ALJ found that McMillin would be off task an additional 6 minutes per hour beyond the need to have two 15-minute breaks. (*Id.*) During the hearing, the ALJ asked the VE to assume a hypothetical which allowed for an individual to take two 15-minute breaks during the eight-hour workday (AR 807-824.) The VE testified to the availability of past work and alternative work. (*Id.*) McMillin argues that the ALJ and the VE ignored the impact of the need to take two 15-minute breaks, as labor laws in Nevada do not require employers to provide 15-minute breaks. (ECF No. 16 at 13.) Thus, McMillin argues that the RFC as found by the ALJ does not allow for the performance of the cited work under Nevada law without special accommodation by employers. (*Id.* at 14.) Therefore, McMillin argues that it was unreasonable for the ALJ to accept testimony that deviates from the standards as articulated in Nevada labor law without an explanation for the basis for that deviation from the VE. (*Id.* at 16.)

At the hearing, the VE testified that her testimony was based on "the Dictionary of Occupational Titles as well as [her] education, experience, and training." (AR 815.) Specifically, the VE stated that based on the US Department of Labor Wage and Hour Division, "employers take non-productive time into consideration … which can allow up to 15 percent time off-task or nine to ten minutes per hour." (AR 817.) The VE affirmed that the off-task time can be for any reason including, "personal time, fatigue, and delay" (AR 820), and that up to ten minutes per hour of off-task time would be tolerated by employers. (AR 823.)

As the Commissioner points out, even assuming Nevada employers only provided 10-minute breaks, McMillin does not challenge the VE's testimony that an individual can be off-task for any reason up to 10 minutes per hour. (AR 821, 823.) The additional 5 minutes unaccounted for by each minimum mandated break, would be accounted for by the fact that "employers take non-productive time into consideration." (AR 817.) Thus, the Court finds, that to the extent the ALJ improperly relied on the VE's testimony that

13

McMillin would need two 15-minute breaks and this conflicts with Nevada labor law, that error is harmless, as any additional break time is covered by employer's expectation of "non-productive time" throughout the workday. *See Molina*, 674 F.3d at 1111 (the court "may not reverse an ALJ's decision on account of an error that is harmless"). Accordingly, the Court finds that the ALJ properly relied on the VE's testimony to determine that McMillin was not disabled as she could perform past relevant work and jobs that existed in significant numbers in the national economy.

## V. CONCLUSION

Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the Court finds the ALJ and Appeals Council's decision was supported by substantial evidence. Therefore, the Court denies McMillin's motion to remand (ECF No. 16), and grants the Commissioner's cross-motion to affirm (ECF No. 19).

## VI. ORDER

**IT IS THEREFORE ORDERED** that McMillin's motion for remand (ECF No. 16) is **DENIED**, and the Commissioner's cross-motion to affirm (ECF No. 19) is **GRANTED**; and

**IT IS FURTHER ORDERED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: January 24, 2020.

_____
**UNITED STATES MAGISTRATE JUDGE**

14